**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | |
| | § | |
| JOE REYNA, JR., | § | Civil Action No.  SA-13-CR-417-XR |
| | § | |
| *Defendant*. | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**ORDER**

Defendant is charged in an indictment with receipt of child pornography on or about August of 2012 and possessing child pornography on or about December 14, 2012.   The Government alleges that the Defendant possessed images of child pornography on a V2 Premier desktop computer and a PNY 16 GB flash drive.

Pending before the court are three motions filed by the Defendant:  a motion in limine (docket no. 73), a motion to dismiss to dismiss the indictment (docket no. 74), and a motion to suppress (docket no. 75).

**Background**

On or about August 25, 2012, the Defendant remotely linked into his employer's network with a company laptop that was issued to him.  The Defendant's employer monitors its system for inappropriate activity and discovered that hash values associated with child porn images were located on the laptop issued to the Defendant.  On or about September 7, the employer notified law enforcement officials of their discovery.

1

On December 14, 2012, the FBI executed a search warrant at the Defendant's home. There are two structures at the Defendant's property.  Seventeen law enforcement officers arrived to the premises to execute the search warrant.  In the building where the Defendant resided, law enforcement officers identified themselves and indicated they had a search warrant. The Defendant refused to open the door and the door was breached.

Approximately ten armed officers entered the building where the Defendant resided. Initially, the officers secured the premises to ascertain how many individuals were inside the premises and whether or not any weapons were readily visible.  During these two to five minutes, the Defendant and his wife were directed to lie down on the floor.

Once the premises were secure, Agent Baker informed the Defendant that he was not under arrest and explained the search warrant.  While this explanation was taking place, some of the ten officers left the structure and some law enforcement officers remained to conduct the search of the premises in execution of the search warrant.  While the search was being conducted, the Defendant was not free to wander inside the premises, but the Defendant was free to go outside the premises or completely leave the property.

Agents Baker and Allovio asked the Defendant if he would consent to being interviewed, that it was voluntary, that he was not under arrest, and that he would not be arrested at the end of any interview.  The Defendant agreed to speak with the agents.  During the interview the agents were dressed in business attire and their weapons were not visible.  The Defendant was not handcuffed during this two-hour interview.  When the interview took place the Defendant received a phone call from his mother, which he took, and he took a bathroom break.  At no time did the Defendant ask to stop the interview.  He never refused to answer a question and did not

request to speak to a lawyer.  When it was explained to the Defendant that his employer 's network indicated that child pornography was traced to his laptop the Defendant asked what date that occurred and he admitted that August 2012 would be correct and he informed the agents that child pornography would also be located on his flash drive.  At the end of the verbal interview, the Defendant spoke privately with his wife for approximately 45 minutes and prepared a written statement.

In his written statement, the Defendant wrote that he understood that he was not under arrest, that he would not be arrested immediately following the interview, that the interview was voluntary, and that he could discontinue the interview at any time.  He further stated that he made the statements free of any threats, promises or coercion.  The Defendant acknowledged that he had visited sites with child porn, denied ever harming any children, and stated that he was going to explain the situation to his family and beg for their forgiveness.[1]

During the interview the Defendant was asked whether he had physically abused any children and whether he possessed any other devices that stored child pornography.  He denied physically abusing any children and stated that only the laptop and flash drive contained images of child pornography.  It was suggested to the Defendant that he submit to a polygraph examination.  The Defendant agreed to the polygraph examination because he wanted to prove that he had not physically assaulted any children.  A polygraph examiner was contacted and was available at that time to conduct the examination.  The agents explained to the Defendant that the polygraph examination was voluntary, that he did not have to go to take it, that if he wanted to take the exam he could ride with the agents in their car or he could take his own vehicle and meet them there.  It was further explained to the Defendant that if he rode in the FBI vehicle, he would

---

[1] Government Exhibit 1 admitted during the March 18, 2015 hearing.

not be under arrest, but that their policy was passengers needed to be placed in handcuffs.  The trip to the polygraph examination was uneventful and the Defendant disclosed that he would be visiting his daughter in Ft. Sill, Oklahoma the following Monday and was looking forward to her graduation ceremony from that military training.

Once they arrived to the FBI office where the polygraph examination was to be administered and exited the vehicle, the handcuffs were removed from the Defendant.  The Defendant was never again placed in handcuffs that day.  Once inside the FBI office, the Defendant was not free to roam inside the secured location, but he was able to request that the examination cease and ask to be escorted out of the building.  The Defendant never asked to stop the examination.  Prior to the examination, the Defendant read and signed two consent forms.[2] The Defendant acknowledged the right to refuse to take the polygraph examination, the right to stop the test at any time, and the right to refuse to answer any specific question.  In a separate document the Defendant acknowledged his *Miranda* warnings.[3]

After the polygraph examination, the Defendant was advised that certain responses from him appeared to indicate that he was untruthful.   The Defendant then admitted that besides the company laptop and flash drive, he had stored child pornography on an "old" computer located in the master bedroom.   He also admitted that he had been downloading and saving child pornography images since 1998 (not 2000) as he had previously told the agents.  The Defendant also admitted that he had created folders in his flash drive and the "old" computer named "young" where he stored his child pornographic images.  The Defendant reduced his statement to

---

[2] Government Exhibits 2 and 3.
[3] Government Exhibit 3.

writing and signed the statement after acknowledging that he was advised of his rights, waived his rights and agreed to provide a statement.[4]

## Motion in Limine

Defendant seeks to prohibit the Government from offering any evidence obtained from the HP Laptop computer belonging to Defendant's employer.  The Government argues that this laptop is secured by a password, that it has not inspected this device, and that it does not intend to offer any evidence from this device.  The Defendant complains that he has not been able to do any forensic review of that device.  The Government is ordered to consult with Defendant's employer in an attempt to access the device and to make the device available to the Defendant's counsel for review.  The motion in limine, however, is denied.

## Motion to Dismiss

In this motion the Defendant complains that the company laptop has not been made available to the Defendant and accordingly Count One of the Indictment should be dismissed. Count One charges the Defendant with receipt of child pornography.  For the reasons stated above and below, there is evidence that Defendant admitted to downloading child pornography in August 2012, and there is evidence that the employer detected hash values associated with child pornography emanating from the laptop issued to the Defendant.  This motion is denied. "Where an indictment is valid on its face, a defendant's challenge to that indictment on the basis that it is not supported by sufficient evidence is without merit."  *U.S. v. Oliver*, 2008 WL 5191739 (S.D. Miss. 2008) (*citing United States v. Mann*, 517 F.2d 259, 267 (5th Cir.1975) (*citing Costello v. United States*, 350 U.S. 359, 363 (1956)). Indeed, "an indictment returned by a

---

[4] Government Exhibit 4.

legally constituted and unbiased grand jury, valid on its face, is enough to call for a trial of the charge on its merits." *Id.* Such a rule is necessary, as "[a]llowing courts to evaluate the quality of evidence presented to a grand jury would 'run counter to the whole history of the grand jury institution.'" *United States v. Strouse*, 286 F.3d 767 (5th Cir. 2002) (*citing United States v. Williams*, 993 F.2d 451, 455 (5th Cir.1993), *abrogated on other grounds by Texas v. Cobb*, 532 U.S. 162 (2001)).

With regard to Counts Two and Three, the Defendant argues that the V2 desktop computer was inoperable, that the file creation and modify dates of all the files are from 1999 to 2001, and that there is no evidence that the Defendant knowingly downloaded or viewed images of child pornography, and that there is insufficient evidence that the Defendant received, viewed or possessed these files on either the V2 desktop or flash drive within the statute of limitations. There is, however, no limitations period for this offense. *See* 18 U.S.C. § 3299. This motion is further denied for the reasons stated above.

## Motion to Suppress

The Defendant argues that during the entire period after entry was made in his home he was in custody and that all verbal and written statements he made were not made voluntarily.

## Analysis

Whether a person is "in custody" is an objective inquiry that depends on the "totality of circumstances*." U.S. v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015). Important factors include: (1) the length of the questioning, (2) the location of the questioning, (3) the accusatory, or non-accusatory, nature of the questioning, (4) the amount of restraint on the individual's physical

movement, and (5) statements made by officers regarding the individual's freedom to move or leave, *Id*. at 775.

This case is fairly similar to *U.S. v. McNair*, 2010 WL 2038297 (W.D. Tex. 2010). In *McNair*, McNair was told that the interview was voluntary, that he was not under arrest, that the agents were investigating trafficking of child pornography, that he was free to leave at any time, and that it "was up to him to answer any questions." Special Agents Allovio and Baker were wearing business suits during the interview. Their handguns remained concealed. The interview initially took place in a bedroom on the second floor to allow for the search of the first floor. The interview lasted approximately one hour and forty minutes. During the interview, McNair admitted to having an interest in child pornography, and acknowledged that he had downloaded images and videos. During the interview McNair signed a "consent to assume online presence" form, wherein he gave FBI agents authorization to take control of and use his "online presence" to Fram337 and other accounts. He acknowledged on this consent form that he had given this "consent freely and voluntarily, without fear, threats, coercion, or promises of any kind...." After examining all of the circumstances surrounding the interrogation, the Court concluded that there was no restraint on McNair's freedom of movement of the degree associated with a formal arrest. McNair was told he was free to leave at any time, was informed that his interview was voluntary, and he was not handcuffed at any point. The Court concluded that a reasonable person would have felt he was at liberty to terminate the interrogation and leave at any time. *See U.S. v. McLean*, 2010 WL 785170 (5th Cir. 2010). The court of appeals affirmed. See 444 F. App'x 7690 (5th Cir. 2011) ("McNair was in his home when the detention occurred, and an agent testified that McNair was told he was free to leave. We have held that under such circumstances, a reasonable person does not suffer the restraints associated with an arrest. *United States v.*

*Harrell*, 894 F.2d 120, 124–25 (5th Cir. 1990). Further, an agent testified that McNair was told that he was not under arrest and would not be arrested that day, which also weighs against a finding of custody. *See United States v. Howard*, 991 F.2d 195, 200 (5th Cir. 1993).  In addition, agents told McNair that it was his decision whether to talk to them, and McNair agreed to cooperate and signed a consent form that allowed agents to use his online identities and passwords.  Although the initial presence of numerous armed FBI agents wearing raid vests may have been intimidating, that alone is not enough. *See Howard*, 991 F.2d at 200. Further, the fact that McNair's interrogation lasted for almost two hours does not mean that the interrogation was per se custodial. *See Harrell*, 894 F.2d at 124 & n. 1.").

In this case, the temporary restriction initially placed upon the Defendant when the house was first entered into by officers and the premises was being checked for the presence of other occupants or dangerous weapons does not place the Defendant in custody.  *See United States v. Fike*, 82 F.3d 1315, 1325 (5th Cir. 1996) *overruled on other grounds by United States v. Brown*, 161 F.3d 256 (5th Cir. 1998) (holding a defendant was not in custody for *Miranda* purposes after officers violently entered the house and pointed guns at the defendant for the first few minutes of executing a search warrant); *United States v. Wright*, 777 F.3d 769, 781 (5th Cir. 2015) (finding an interrogation was non-custodial where "at the very most, [the defendant] was handcuffed for 10–15 minutes along with other occupants of the home" when officers first entered the home, and the defendant was not handcuffed during the interview in question); *United States v. Bengivenga*, 845 F.2d 593, 598 (5th Cir. 1988)  ("[A] Fourth Amendment seizure does not necessarily render a person in custody for purposes of *Miranda* . . . the core meaning [of] . . . custody in the *Miranda* sense [is] the restraint of a person's freedom to walk away from the

police . . . custody arises only if the restraint on freedom is a certain degree—the degree associated with formal arrest.") (internal quotations omitted).

Likewise, the mere fact that the Defendant was not allowed to roam inside his house while the officers were looking for items responsive to the search warrant does not place the Defendant in custody.  *Compare Fike*, 82 F.3d at 1325 (holding a defendant was not subject to a custodial interrogation where officers breached the door and pointed guns at him, he was not free to roam inside his own home while several officers executed a search warrant, he was told multiple times he was not under arrest, and he voluntarily answered questions), *with United States v. Cavazos*, 668 F.3d 190, 194-95 (5th Cir. 2012) (holding a district court could find a custodial interrogation where a defendant was immediately targeted and handcuffed at the beginning of a search, forcefully separated from his family in a different room for questioning, told the questioning was "non-custodial" as opposed to a more layman's term such as he was "free to leave," and given no privacy to use the bathroom or talk on the phone during the interrogation); *see also United States v. Hargrove*, 625 F.3d 170, 181 (4th Cir. 2010) (holding an interrogation was non-custodial where a defendant could move about his house to attend to his pets or perform other tasks, but could not roam completely freely as it might interfere with the officers conducting the search; where the district court also found the questioning was "comfortable," "amicable," and "non-threatening").

Otherwise, during the interview at the home, reviewing the *Wright* factors and the totality of the circumstances, the Court finds that the Defendant was not in custody.  He was advised the interview was voluntary; he took private phone calls during the interview and privately spoke with his wife.  He wrote a statement.  The questioning was non-threatening.  The Defendant

wrote that he made the statement voluntarily, understood he was not under arrest, and was not threatened or coerced.

With regard to the transport to the FBI office, the Defendant chose to travel with the agents.  He understood that if he did so, FBI policy required him to be handcuffed while inside the car.  He agreed to that condition.  He could have rejected taking a polygraph examination. Alternatively, he could have elected to drive himself to the FBI office.  At any time he could have requested to stop the vehicle, let him leave the vehicle, or request that he be driven back to his home.  Otherwise, the Defendant did not make any incriminating written or verbal statements while he was being transported to the FBI office.

With regard to the polygraph examination and the verbal and written statements he provided after the examination, the Defendant acknowledged in writing his rights and that the examination was voluntary.  Although the Defendant was not free to roam the FBI facility, he was free to request that the examination not take place, not answer any questions and request that he be escorted out of the facility.

## Conclusion

The Defendant was not in custody throughout the events described above, and his verbal and written statements were made voluntarily.  A reasonable person would have felt he was at liberty to terminate the interrogation and leave at any time.  The motion to suppress is in all respects denied.

SIGNED this 24th day of March, 2015.


_____
XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE